[Civ. No. 16786. First Dist., Div. One. Aug. 22, 1956.]

MATTHEW HICKENBOTTOM et al., Appellants, v.
LEVI R. JEPPESEN, Respondent.

Lew M. Warden, Jr., for Appellants.

Ropers & Majeski for Respondent.

WOOD (Fred B.), J.—In this action for damages for injuries received in an automobile collision at the intersection of Alemany and Skyline Boulevards, San Francisco, verdict and judgment were for the defendant. Plaintiff-appellants claim (1) the evidence shows, as a matter of law, that defendant was negligent and plaintiff not, and (2) erroneous rulings during the course of the trial.

(1) *As to the negligence of the respective parties, the evidence is sufficient to support the verdict.* The evidence which plaintiffs invoke merely produced a conflict which it was the function of the triers of the facts, not that of a reviewing court, to appraise and determine.

At this intersection Alemany* runs in an easterly-westerly direction; Skyline, north and south. Plaintiffs were traveling westerly on Alemany, approaching Skyline; defendant, easterly on Alemany, approaching Skyline. At the intersection, defendant turned left on Skyline. The collision occurred in the northeast quarter of the intersection. It happened about 1:20 p. m. The weather was clear and the road dry. Plaintiffs' counsel in his opening statement said "there was no speed involved in this accident."

Plaintiffs claim the evidence demonstrates that defendant in making his left turn "cut the corner" in violation of section 540, subdivision (b) of the Vehicle Code, constituting negligence as a matter of law. It is true that defendant's testimony upon deposition is susceptible to the interpretation that in making his turn he crossed the center line of Alemany too soon, but at the trial he explained that he was confused as to the import of the question, interpreting the question as referring to the center line of Skyline, that in fact he did not turn until he reached the latter, though in making the turn

---

*Westerly from Skyline, Alemany is known as the Coast Highway but for convenience of reference we will call it Alemany throughout.

his car may have straddled the center of the intersection. As said in *Everman v. Wright*, 135 Cal.App.2d 555, 557 [287 P.2d 533], whether defendant "made a left turn in violation of said section, and whether he was negligent at all . . . were questions of fact . . ." Moreover, the principle that a violation of a statute is negligence *per se* is " 'subject to the limitation that the act or omission must proximately cause or contribute to the injury.' " (*Gomez v. Lindberg*, 11 Cal.App.2d 730, 733 [54 P.2d 1153].) We find nothing to the contrary in the authorities cited by plaintiffs.

Next, appellants contend that as a matter of physical necessity defendant violated their right of way, that when defendant was about to make his turn their car must have been so close to the intersection "as to constitute an immediate hazard" (Veh. Code, § 551, subd. (a)). But that can not be said as a matter of law. There is evidence that when defendant reached the intersection he observed that plaintiffs' car was 200 to 300 feet away; there were no other vehicles in sight; the cars met in the intersection of the outer lane of Alemany and the inner lane of Skyline, the left front part of plaintiff's car and the right front of defendant's car making contact; and testimony of plaintiff Matthew Hickenbottom that his car hit defendant's. We can not say from this and other attendant circumstances that when defendant was about to make his turn a reasonably prudent person in his position would apprehend the probability of colliding with the approaching vehicle were he then to make the turn. (*Dawson v. Williams*, 127 Cal.App.2d 38, 42 [273 P.2d 75]; *Ederer v. Shanzer*, 134 Cal.App. 137, 139-140 [25 P.2d 38].)

The question as to plaintiff's negligence was also one of fact. Plaintiff Matthew Hickenbottom testified he saw defendant's car as the two were approaching the intersection but could not estimate the distance of either of them from the intersection at the time (later he estimated that his own car was about 90. feet from the intersection at that time); there was nothing to obstruct plaintiff's vision the last 300 feet of his approach; that when he arrived at the intersection defendant had not quite reached it; that as he approached he did not observe anything unusual about defendant's car, observed no signals (defendant testified that he turned on his left-turn blinker lights when 75 to 150 feet from the intersection, and kept them on); that he was a car-length or better into the intersection when he saw defendant's car

coming toward him; that defendant was a car length away when he first started to turn in plaintiff's direction; plaintiff then put his brakes on. Yet, there is evidence that plaintiff's car made skid marks commencing about 22 feet and ending about 7 feet east of the east line of the intersection (about 44 feet and 29 feet, respectively, east of the point of collision). That tends to indicate that plaintiff became aware of defendant's left-turn, or of his intention to turn appreciably sooner than he admitted on the witness stand but that he quit the use of his brakes sooner than he should. Also, the jury could have inferred that plaintiff was less attentive to the situation than he should have been, after he first observed defendant approaching the intersection. He seemed evasive as to where he was looking after he first saw defendant's car and when he next observed it just before the collision. He admitted that upon deposition he answered "Yes" to the question, ". . . you say you first saw him [defendant] as he was coming up to make a turn; then you watched him for a while and then, I take it, you looked elsewhere for traffic on the Skyline, isn't that right?" While that might not be evidence of the fact, it tended to cast doubt upon the accuracy of his testimony given at the trial. This is not the kind of evidence that spells nonnegligence as a matter of law. Moreover, if the jury found defendant nonnegligent it would not matter whether plaintiff were negligent or not.

(2) *The rulings complained of do not furnish a basis for reversing the judgment.*

Plaintiffs complain of the refusal of an instruction defining "immediate hazard," couched substantially in the terms of B.A.J.I. No. 150-D. The court read to the jury the text of subdivision (a) of section 551 of the Vehicle Code, prefaced by this statement, "It will appear from a consideration of Section 551 of the California Vehicle Code that defendant was under a duty not to make a left turn until only after he had cautiously estimated that the automobile of plaintiffs, approaching from the opposite direction, was not so close to the intersection as to constitute an immediate hazard." The requested instruction should have been given. However, we think the instruction actually given correctly informed the jury of defendant's duty toward the plaintiff. The words "immediate hazard" seem reasonably clear in the context in which they appear, both in the statute and in the instruction given; the hazard of a collision. We find here no

prejudice to plaintiff's case. (See *Pattisson* v. *Cavanagh*, 18 Cal.App.2d 123 [63 P.2d 868, 64 P.2d 945]; *Roy* v. *Mission Taxi Co.*, 101 Cal.App.2d 438, 447-449 [225 P.2d 920].)

Plaintiffs complain of the refusal of the court to give their instruction concerning their burden of proof, but this subject was covered by instructions that were given.

It was not error for the court to give an instruction on unavoidable accident, for there was a conflict of evidence on the question of defendant's negligence. (*Parker* v. *Womack*, 37 Cal.2d 116, 122 [230 P.2d 823]; *Johnston* v. *Orlando*, 131 Cal.App.2d 705, 711 [281 P.2d 357].) Plaintiffs criticize the language of the instruction given, as confusing and misleading, but we do not find it so. Although perhaps not as clearly worded in all respects as B.A.J.I. Number 134 (approved in *Temple* v. *De Mirjian*, 51 Cal. App.2d 559, 564-565 [125 P.2d 544]), it gave the jury substantially the same information as Number 134.

Plaintiffs say that the instruction given on contributory negligence was prejudicially erroneous in telling the jury that "Ordinarily, the burden rests upon the defendant to prove contributory negligence, the exception being where such contributory negligence appears from the testimony offered on behalf of the plaintiffs." Plaintiffs contend that the court thereby told the jury that the burden shifted in the event indicated. That language was unfortunate but we do not believe it misled the jury, for it was immediately followed by this definitive statement: "In other words, the burden of proof is met as to contributory negligence if the same is shown by the evidence in the case regardless of by whom the evidence is introduced."

Plaintiffs take exception to an instruction which told the jury that if Mr. Hickenbottom was guilty "of the slightest amount of negligence which proximately contributed" to the accident, plaintiffs could not recover. This was erroneous.

" ' "The rule is, not that any degree of negligence, however slight, which directly concurs in producing the injury will prevent a recovery; but, if the *negligence* of the plaintiff, *amounting to the absence of ordinary care,* shall contribute proximately, in any degree, to the injury, the plaintiff shall not recover." . . .' " (*Kettman* v. *Levine*, 115 Cal.App.2d 844, 850 [253 P.2d 102]; emphasis added.)

However, the immediately preceding paragraph of the instructions on contributory negligence correctly stated that "*Contributory negligence is the want of ordinary care* on the

part of a person seeking damages by the actionable negligence of another combining and concurring with such negligence and proximately contributing to the injury." (Emphasis added.) And the questioned instruction was followed by a paragraph which among other things told the jury that the plaintiff driver was bound to use "reasonable care" to anticipate the presence of other vehicles and to slow up and stop "if to a person of ordinary care and prudence," acting under like circumstances, the situation required. Also, the court gave B.A.J.I. 113, which in listing the issues in sequence correctly posed the question: "If you find that plaintiff was negligent, you then must determine a fourth issue, namely: Did that negligence contribute in any degree as a proximate cause of the accident?" Under these circumstances we do not think the jury was misled. It is quite similar to the situation which obtained in the Kettman case, in which this court concluded the error was not prejudicial. (Pp. 850 and 851 of 115 Cal.App.2d; hearing by Supreme Court denied, p. 852. See also *Odian* v. *Habernicht,* 133 Cal.App.2d 201, 205 [283 P.2d 756]; hearing by Supreme Court denied.)

Plaintiffs criticize several instructions upon the ground that they unduly emphasize plaintiffs' duty of care and plaintiffs' burden of proof. We do not so read them. The court also instructed as to defendant's duties and his burden of proof. It is hardly feasible to give both in the same sentence or paragraph. The court included a proper definition of "negligence" which was general in terms and application; also, one which expressly stated it was the duty of both parties "to exercise ordinary care" and "to maintain a reasonable lookout for other traffic lawfully using the highways as such lookout would have been maintained by persons of ordinary prudence in their position." Reading the instructions as a whole, we conclude that they were not out of balance and did not mislead the jury.

A certain instruction to the effect that the jury must determine liability before awarding damages, plaintiffs characterize as misleading and a confused misstatement of the law but they do not say wherein it thus erred. It appears correct. If it lacked anything because of its brevity, that was cured by an instruction in the very words of B.A.J.I. 113.

An instruction that the jury must lay aside any sympathy it may have for any party and decide the case solely upon the evidence and the law, plaintiffs criticize because it

was longer than B.A.J.I. 4. This criticism is without merit.

Nor do we find any prejudice to the plaintiffs when, in advising the jury as to the measure of damages, the court told them to fix such actual damages as might be shown by the evidence and not to indulge in speculation nor be swayed by "sympathy or prejudice."

One of defendant's witnesses was a police officer who had made a diagram of the scene of the accident. Plaintiffs sought upon cross-examination to interrogate him concerning the contents of a police report of the accident but he testified he prepared only the diagram not the report, and was not familiar with the report. Objections to that line of inquiry were sustained. Plaintiffs then offered the report in evidence for the purpose of comparing the handwriting thereon with the witness' handwriting on certain of his notes that were in evidence. Objection to this offer was also sustained. We find no error in these rulings. This is not a case of proving the execution of an instrument. The report had no independent evidentiary value. Nor was it a writing (whether or not prepared by the witness or under his direction) which the witness used to refresh his recollection. Accordingly, the predicate for its use by the opposite party in cross-examination or by reading it to the jury, was lacking. (Code Civ. Proc., § 2047.)

Nor was it reversible error for the court to permit defendant when cross-examining Mrs. Hickenbottom to show that plaintiffs' insurance company paid about $500 of their hospital and doctors bills. Those questions should not have been allowed. However, upon her redirect examination it was shown that those bills amounted to about $1,000 and their insurance coverage in respect thereto was limited to $500. Later, the court referred to this testimony and informed the jury: "You are not to take this fact into consideration in determining the amount of damages to be awarded plaintiff, if damages are to be awarded. If plaintiff is entitled to recover damages they shall be assessed by you in accordance with the instructions given you on the subject." Under the circumstances, we do not deem this cross-examination prejudicial to plaintiffs' case.

Plaintiffs claim prejudicial error in the refusal of the court to permit both of plaintiffs' counsel to cross-examine one of defendant's witnesses. One of them did cross-examine the witness at considerable length and at the end of his recross-examination said there were "no further questions."

It appears that plaintiffs' other counsel wanted the witness interrogated concerning certain X-rays. It does not appear from the record but that he could easily have suggested such a line of questions to his associate. We find no error in the court's ruling.

 Finally, plaintiffs claim reversible error in the denial of their motion for new trial, asserting they were surprised by the testimony of the police officer concerning skid marks on the pavement and related matters. But they failed at the time to make known to the court the predicament in which they now say they found themselves. For example, they did not ask for a continuance. This was not the very last witness. Three other witnesses followed this one. They could not maintain their silence under such circumstances and later insist upon a new trial or a reversal of the judgment. (*Kauffman* v. *De Mutiis*, 31 Cal.2d 429, 432-433 [189 P.2d 271].)

The judgment is affirmed. The appeal from the order denying a new trial (a nonappealable order) is dismissed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied September 21, 1956, and appellants' petition for a hearing by the Supreme Court was denied October 17, 1956. Carter, J., was of the opinion that the petition should be granted.