[Civ. No. 19025. First Dist., Div. One. Sept. 14, 1961.]

THE PEOPLE ex rel. THE DEPARTMENT OF PUBLIC WORKS, Respondent, v. SAM NEIDER, Appellant.

George M. Nause and Harold B. Lerner for Appellant.

Holloway Jones, Jack M. Howard, Roger Anderson, Robert S. Webber and Robert E. Reed for Respondent.

DUNIWAY, J.—The Supreme Court having decided in *People* v. *Neider*, 55 Cal.2d 832 [13 Cal.Rptr. 196, 361 P.2d 916], that we improperly granted a motion to dismiss this appeal, it is now before us for decision on the merits.

Two separate actions were filed below. The first was filed March 10, 1955, the second, April 22, 1957. They were consolidated and tried together insofar as they affect the appealing defendant Neider. Separate verdicts were rendered in each, but one set of findings of fact and conclusions of law was signed by the judge, and one judgment was entered. The parties refer to the first action as the freeway case, and to the second as the drainage case, and we follow their practice. The appeal is solely in the drainage case.

The same two parcels of land in Marin County are involved in the two actions. Together they form a triangular parcel bounding Highway 101 on the east, a little to the north of the Richardson Bay crossing. The frontage is about 2,000 feet, and the depth, at the apex of the triangle, is about 620 feet. The portion of the highway along appellant's land had been formed by filling in marsh land, the highway surface being raised several feet above the level of the marsh, with culverts through the highway for drainage, the water flowing to the west. Appellant's land was also marshy, and was filled by him. The fill was carried to what appellant supposed was the highway property line, and a depression was left between the highway embankment and the filled part of appellant's land, thus forming a ditch through which drainage water flowed into the culverts. This was called, throughout the trial, the "old ditch," and in fact 1,258.78 feet of the ditch were on appellant's land.

The state decided to widen the highway to a six-lane limited access freeway. In the freeway case, it sought to take from appellant parcels 20-First and 20-Second, the old ditch, in fee and drainage easements over parcels 20-Fifth and 20-Sixth, the new ditch, and obtained possession under an order issued at the inception of the case. It filled the old ditch, widened the highway, erected the usual chain link fence, built, east of the fence, an "access" or "frontage" road, and beyond the road dug a new ditch, parallel to the former location of the old ditch, and about 47 feet further east (center line to center line). The new ditch is on parcels 20-Fifth and 20-Sixth. As to those parcels, the judgment in the freeway case, which is now final, is based upon findings that the drainage easement is temporary, to expire June 30, 1957, and that damages are limited to such a taking, appellant having the right thereafter to use the parcels as he pleased. The court particularly con-

cluded that after June 30, 1957, appellant would have the right, as owner, to fill the new ditch.

The state then apparently decided that it needed to keep the new ditch open permanently to protect the highway, and filed the drainage case on April 22, 1957, in advance of the date when appellant could fill the new ditch or otherwise use the property in which it lay. In the drainage case complaint, parcels 20-Fifth and 20-Sixth (so called in the freeway case) are called parcels First and Second, and the state sought condemnation of a permanent easement over them for drainage. A new trial having been granted in the freeway case as to parcels 20-First and 20-Second, the old ditch, the cases were consolidated. The judgment awards the following:

*A. In the freeway case*: (old ditch—in fee)

20-First ....................... $30,660.00
20-Second .................... 43,942.00

*B. In the drainage case*: (new ditch—easement)

First ......................... $33,259.00
Second ....................... 31,570.00

The judgment in the freeway case is final; the appeal is solely in the drainage case.

The appeal is based upon claimed errors in the giving and refusing of instructions, and upon a claim that the judgment is prejudicially ambiguous. We have concluded that the judgment should be modified, and, as so modified, affirmed.

1. *Claimed error as to encroachment permits.*

At plaintiff's request, the court gave instruction B, which is set out in the footnote.[1] Appellant requested an instruction, Number 6, which was refused; it is also set out in the footnote.[2]

---

[1] "You are instructed that the owner of a fee interest in land may make any use of the land that does not interfere unreasonably with an easement thereon. This means that with reference to the property that is the subject of the drainage case the property owner may make all uses of the property within the permanent easements known as Parcel First and Parcel Second so long as the free flow of drainage waters is not interrupted. Such uses therefore would include the property owner's right to culvert these drainage waters and backfill so that the area could be utilized as access to the remaining property. A further use would include the property owner's right to bridge across the ditches within the permanent easement for the purpose of providing such access, so long as the free flow of drainage waters is not interrupted."

[2] "The drainage easement area sought to be acquired by the Department of Public Works is only a part of a larger parcel. One of the valuation questions you have before you for decision in the drainage easement case is the amount of severance damages caused to the severed residue

The essence of appellant's complaint is that the valuation witnesses for the plaintiff assumed that appellant could do what the court, in instruction B, told the jury that appellant could do, without obtaining a permit from the Department of Public Works, and that the law is otherwise.

Assuming, for the moment, that such a permit would be required, under Streets and Highways Code, sections 23, 90, 104, subdivision (g), 670, 672 and 725, as appellant contends, there was still no error in refusing instruction Number 6. It is not the law that the granting or denying of such a permit would "depend upon the future pleasure or caprice of any bureaucrat who may choose to grant or refuse to grant a permit upon such terms or conditions, whether easy or hard or burdensome, as it may please him to impose." The law does not vest public officials who are dealing with private rights with any such arbitrary and unfettered powers. The instruction in this respect is an argument, and an intemperate one, and the court was under no duty to give it. (*Cf. Lenard* v. *Edmonds*, 151 Cal.App.2d 764, 774-775 [312 P.2d 308]; *Roy* v. *Mission Taxi Co.*, 101 Cal.App.2d 438, 446 [225 P.2d 920].) Nor was the court under a duty to rewrite the instruction for appellant. (*Roy* v. *Mission Taxi Co., supra*, at page 447, and cases there cited.)

Again, making the same assumption, the instruction is in another respect not a correct statement of the law. It tells the jury that it must totally disregard the possibility that a permit could be obtained. There is nothing pointed to by appellant, in the evidence or the law, that indicates that the department would not, at any time, or upon any terms, grant

---

of the larger parcel that remains after cutting off the drainage easement area. In that connection I instruct you that you should not make a reduction in any amount or to any extent whatever in the amount of the severance damages merely because you may believe or may be convinced that at some time in the future Mr. Neider or any owner or occupant of the severed residue may obtain from the Department an encroachment permit or permits that would permit crossing from the severed residue across and over the drainage easement area to the access or service road. You must disregard anything you may have heard about any possibility or likelihood of obtaining encroachment permits, because what the Department of Public Works is seeking is a judgment of condemnation that will not be legally binding upon it in the matter of crossing the easement area without any written permit from it. The amount of severance damages cannot be made to depend upon the future pleasure or caprice of any bureaucrat who may choose to grant or refuse to grant a permit or who may choose to grant a permit upon such terms or conditions, whether easy or hard or burdensome, as it may please him to impose."

a permit. The plaintiff sought to condemn only an easement, and that is all that the judgment gives it. Under those circumstances, the department could not arbitrarily take away appellant's rights as owner of the fee. (*Colegrove Water Co.* v. *City of Hollywood,* 151 Cal. 425, 430-431 [90 P. 1053, 13 L.R.A. N.S. 904].) Compare *People* v. *Henderson,* 85 Cal. App.2d 653, 657 [194 P.2d 91]: "Such determinations by public authorities, vested with authority to make them, are deemed final and conclusive *except where shown to have been the result of capricious or arbitrary action or abuse of discretion.* [Citations.]" (Emphasis added.) Appellant himself proved that a permit was granted under similar circumstances, and offered the permit in evidence. We can see no reason for instructing the jury to disregard the possibility that appellant could get a permit. On the contrary, the possibility of obtaining it would certainly affect the amount of severance damage involved.

 Again assuming that a permit would be required, instruction B is a correct statement of the law, as far as it goes, and the judgment expressly provides that appellant "may make all uses of the property within the easement . . . which are not inconsistent with such easements for drainage purposes and incidents thereto and so long as the free flow of drainage waters is not interrupted." Thus, the interest condemned is expressly made subject to the rights of appellant, as fee owner, to use the property, and is, in our view, consistent with the rights described in instruction B.

We find it unnecessary to decide the question posed by appellant as to whether a permit is required. The plaintiff takes the position that it is not, and we see no reason why the judgment should not be modified to so provide. If, hereafter, any further restriction should be imposed upon the appellant's use of the property, he would have a new cause of action on that basis. (*People* ex rel. *Dept. of Public Works* v. *Pera,* 190 Cal.App.2d 497, 501 [12 Cal.Rptr. 129].) This will apparently satisfy appellant, as he states in his brief that "the issue could be solved if the plaintiff's attorneys would simply stipulate that the judgment should be 'in a binding form' with respect to the matter of a permit."

2. *Claimed error as to responsibility for surface waters.*

Appellant complains of the giving of instruction A, set out

in the footnote,[3] and of the refusal of his instructions 6-A and 6-B, also set out in the footnote.[4]

The appeal being in the drainage case alone, and parcels 20-First and 20-Second being involved only in the freeway case, in which the judgment is final and no appeal is pending, we cannot see how appellant can complain of instruction A. It expressly relates only to those two parcels—the old ditch.

Appellant's theory, as to instructions 6-A and 6-B, seems to be that his property was so located with reference to the highway that he had the right to have his surface waters flow from his land across the highway at the time that the drainage action was filed; that any servitude to which his land may have been subject when the earlier, freeway, action was filed was extinguished by the state when it acquired parcels 20-First and 20-Second and filled the old ditch, and that therefore, his land not being burdened with any duty to pre-

[3] "You are instructed that the property which is the subject of this action would have the obligation in the before condition of receiving the surface waters which drain across it to the Bay; that is to say, the waters which were carried in the ditches in the before condition through the area known in this case as Parcels 20-First and 20-Second were the responsibility of the property owner. Specifically therefore the property owner would not be entitled to fill the ditches in Parcels 20-First and 20-Second without providing other adequate and proper drainage of said waters. The property owner would have no right to fill the ditches in such manner so as to permit the said waters to flood or overflow onto the highway."

[4] (6-A) "The land of defendant Neider and the land occupied by Highway 101 alongside the Neider land are within the same watershed and the same drainage area of surface waters as they flow in obedience to the law of gravity from higher to lower land in the course of their flow to and into Richardson Bay. With respect to the drainage of surface waters the State is in no different or better position in law than a private owner of land. The land of defendant Neider must bear the burden of receiving the surface water naturally flowing onto it from higher land within the watershed, but he has the corresponding right to have those surface waters flow freely from his land onto the lower land occupied by Highway 101, and it was and is the burden of the State to receive that drainage of surface waters without obstructing their flow onto the highway area in the course of their drainage into Richardson Bay. It is the sole burden and duty of the State as an adjoining landowner of lower land to receive the flow of surface waters and at its own cost and expense to provide suitable arrangements for the waters to cross the highway area."

(6-B) "The fact that the Neider land was originally marsh land and was improved by filling by him does not affect his right to have the State highway land receive surface waters from his land. His land was higher in elevation than the highway area both before and after he filled his land, and it is a public policy to encourage the reclamation of marshy land."

vent the flow of surface waters across the highway, was more valuable than if so burdened.

We note, first, that the court did not tell the jury that appellant had any obligation to dig the new ditch himself, or to take any other comparable steps to prevent the flow of surface waters across the highway after the old ditch was filled by the state. The action was by the state to condemn an easement so that it could maintain the new ditch that it had already dug under the final judgment for a temporary easement obtained by it in the freeway case. This condition of affairs would not, in itself, carry any implication to the jury that appellant had a duty to protect the highway from surface waters.

Appellant claims, however, that prejudice arises because valuation witnesses for the state assumed, in their testimony, that appellant did have a duty to keep his surface waters from flowing onto the highway. The assumption was correct. Streets and Highways Code, section 725, is specific on this point, and see section 1487, and Penal Code, section 588. In *O'Hara* v. *Los Angeles County Flood etc. Dist.*, 19 Cal.2d 61, at page 63 [119 P.2d 23], the Supreme Court says: ''A governmental agency, however, in constructing public improvements such as streets and highways, may validly exercise its 'police power' to obstruct the flow of surface waters not running in a natural channel without making compensation for the resulting damage. [Citations.]'' The court there distinguished the rule relating to waters flowing in a natural channel, on which appellant relies. Nowhere in instructions 6-A or 6-B is there reference to such a channel; the only reference is to surface waters. Thus the instructions are not a correct statement of the law, and the court properly refused them.

The court's finding in the freeway case, that the state, on July 1, 1957, ''will be a lower landowner with respect to the freeway area of land and the defendant Neider will be upper landowner'' adds nothing to the argument. It is still true that, as to surface waters, not running in a natural channel, the instructions are not correct.

3. *Claimed error as to method of valuation.*

Appellant asserts that his instructions 14-B and 14-C should have been given.[5]

[5] ''When the State through exercise of the power to condemn land for a public use takes land from an owner, then the Bill of Rights in our

Appellant's expert witnesses valued his land on the theory that the portion from which the new ditch easement was taken was most suitable for a "highway commercial" use, the back part of the property being most suitable for a shopping center. They placed a higher value on their assumed highway commercial strip, on a per square foot basis, than on the rest of the property. The theory of plaintiff's witnesses was that a shopping center was the highest use for the whole. Appellant's instructions were designed to persuade the jury to adopt the theories of his witnesses. As such, they seem to us to invade the fact-finding province of the jury; it was up to the jury to evaluate the testimony of the experts, and to accept or reject their theories depending on whether the jury found them to be correct.

The court did instruct the jury that they should weigh the reasons given for expert testimony, and that they were not bound to accept the testimony of any expert. It correctly defined market value. It told the jury to consider the purposes for which the property was adopted, and the economic feasibility of any particular use. It said that the jury was not bound to value on a per square foot basis, and that the jury need not assume that the frontage portion of the land is of exactly the average value per square foot of the whole parcel. It advised the jury that with respect to both the front foot method and the per square foot method, it must consider the testimony of all the witnesses and the method employed by them, either front foot or square foot, and that the jury are the "sole judges of that testimony and of that portion thereof which you wish to accept."

These instructions were substantially correct; appellant would have, in effect, required the jury to adopt appellant's theory of value. This would be quite improper. (See *People* v. *Loop*, 127 Cal.App.2d 786, 799-800 [274 P.2d 885].)

Constitution requires that the State pay to the owner the highest price that the land would bring in the market. If there are two ways in which the land taken can be valued then the Bill of Rights requires the jury to value the land in whichever of the two ways it would bring the highest price in the market."

"If you find from the evidence the strips of land taken by the State in the two cases before you are of higher or greater value considered as strips of commercially zoned land along the highway than they would be considered merely as average parts of the entire area of approximately 16 acres then it would be your duty to value them at their higher or greater value."

4. *The claimed ambiguity in the judgment.*

Appellant objects that the judgment does not make it clear that he need not obtain a permit before culverting or bridging the ditch. The plaintiff's position is that he need not, and we see no reason why the judgment should not be modified to say so. (See *People* v. *Pera, supra,* 190 Cal.App.2d 497, 501-503.)

There is therefore added to the next to the last paragraph of the judgment, at the end thereof, the following: "The right of the owner of the fee interest to use the property as above provided is not subject to any requirement that said owner apply for or obtain any permit from the Department of Public Works of the State of California authorizing such use; said right may be exercised, as herein provided, without any such permit."

As so modified, the judgment is affirmed, each party to bear own costs on appeal.

Bray, P. J., and Tobriner, J., concurred.