[Civ. No. 1894. Fourth Appellate District.—May 20, 1938.]

KERN COUNTY FINANCE COMPANY (a Corporation), Respondent, v. JACK IRIART et al., Appellants.

Arthur E. Schifferman for Appellants.

Brittan & Mack for Respondent.

BARNARD, P. J.—This is an action on a promissory note for $1,000 with interest at 10 per cent, dated November 14, 1934, payable on demand and signed by both defendants. The action was filed on July 6, 1936, and in their answer the defendants admitted execution of the note by failing to deny

the same, denied that there was any consideration, and, as an affirmative defense, alleged that for some time before and after November 14, 1934, the defendant James Iriart was employed by the plaintiff to purchase automobiles for it, that the $1,000 represented by the note was advanced to him as a revolving fund to be used in purchasing automobiles for the plaintiff and its agents and for expenses incidental thereto, and that said sum had been expended by him for the benefit of the plaintiff and fully accounted for. At the trial the plaintiff made formal proof of the execution of the note, delivery of the $1,000, demand for payment, and failure to pay. The remainder of the trial, which occupied five days, was consumed with the defense set up in the answer. The defendant James Iriart testified that he had unfortunately lost his account showing what he had done with the money. However, considerable opportunity was afforded the defendants to establish their defense in other ways, as shown by the time consumed in the trial and the length of the transcript, which contains nearly 500 pages. A jury returned a verdict in favor of the plaintiff and this appeal followed the judgment.

It would be impracticable and serve no useful purpose to consider in detail all of the many points raised by the appellants. ▮ It is first urged that they were unduly restricted on their *voir dire* examination of prospective jurors. In several of the instances complained of it fully appears that the court permitted the questions to be asked and answered. In one case a juror said he was not indebted to the respondent or to any of its members but that he had had a business transaction with that corporation more than five years before. An objection to a question as to what was the nature of that business was sustained. Not only was this matter rather remote, but the court offered to let counsel for appellants go into the question as to whether that old matter would have any influence on the present case. It further appears that the appellants challenged this juror and he did not sit in the case. A juror said he belonged to a fraternal organization to which some of the men in the respondent corporation belonged. An objection was then sustained to the question as to which of "these gentlemen" belonged to the organization, although the court offered to permit counsel to ask whether any officer of the respondent corporation belonged to the same organization. Not only does it

appear that sufficient information was brought out to show the possibility of prejudice, but the juror in question was excused by the appellants. In the only other matter which need be referred to a juror was asked if he had ever sued anybody on a promissory note. He replied that he had. When asked whether he had done so within the last year or so he replied that it was "longer than that". He was then asked how many notes he had sued on and an objection was sustained. It neither appears that the ruling was erroneous nor prejudicial. The record discloses that a rather unusual opportunity for the examination of prospective jurors was afforded the appellants.

█ It is next urged that the court erred in rejecting a number of offers of proof of material evidence on the part of the appellants. In a number of the instances set forth in this connection the offers of proof were made during the cross-examination of the president of the respondent corporation, following his testimony in the formal proof of execution and nonpayment of the note. A lengthy cross-examination had already been allowed and in sustaining objections to and rejecting these offers of proof the court stated that these matters might be gone into in the appellants' own case. In most, if not all, of these instances this was done. The court merely exercised a reasonable discretion in controlling the order of proof and no error or prejudice appears.

█ The appellants offered in evidence a record book which had been furnished James Iriart by the respondent and which had been kept by Iriart with the exception of the first item which had been entered by the respondent. An objection to this was sustained. If this book contained everything that counsel said it did it was valueless on the question before the court. Not only were the contents of the book largely, if not entirely, immaterial, but all of the matters which counsel said he wanted to prove by this book were gone into over and over again through letters and telegrams and oral evidence. █ The appellants offered to introduce into evidence the complaint and other documents in a suit for damages for personal injuries which had been brought in Indiana and an objection was sustained. It was and is appellants' contention that the respondent brought the present action as a matter of spite after that corporation had been joined as a party to the In-

diana suit. The fact that such an action had been brought in Indiana, and many pages of testimony concerning it, were admitted in evidence, and the particular documents here in question could have had no effect upon the result in this case.

█ Error is assigned in the rejection of an offer of proof to the effect that a certain witness was friendly to the respondent. The fact of such friendship had already been abundantly shown and the court properly excluded evidence which would have been merely cumulative. The last contention under this point is that the court refused to permit the appellant to prove that Jack Iriart, who is the father of James Iriart, had borrowed large sums of money at a lower rate of interest at about the time this note was given. It is argued that this would have shown that he would not have agreed to pay 10 per cent interest. He signed the note for his son in connection with his son's business and probably did not expect to have to pay it. The fact that he was already largely indebted might well explain the necessity for a higher interest rate on a further loan. In view of the limited offer of proof and the possibilities involved it cannot be held that this evidence was of sufficient materiality to have affected the result, even if it be assumed that it was admissible.

█ It is next urged that the appellants were denied a fair trial because at the close of the first day the trial judge committed their counsel to jail until 7 o'clock A. M. on the next day for contempt of court. This followed this counsel's repeated failure to obey the orders and admonitions of the court and his insistence upon continued arguments after rulings had been made, and after he had been fully and completely warned as to what would happen if he persisted in his conduct. While we are not here concerned with the merits of the order thus made it may be observed that the trial judge displayed a marked degree of patience before taking such action. The sentence for contempt was not made in the presence of the jury and the only prejudice sought to be shown is that counsel's loss of sleep, occasioned by his confinement overnight in jail, rendered him incapable of properly presenting his defense the next day. In support of this claim our attention is called to the fact that on the following day counsel asked for an adjournment for the noon recess at ten minutes of twelve, stating to the court that he was half

asleep. An adjournment was then taken until 2 o'clock. No other request for an adjournment or continuance was made and the claimed incapacity of counsel was not otherwise called to the court's attention. The record indicates no lack of zeal and energy on the part of counsel, even after his commitment to jail, and no prejudice appears.

██ It is next contended that the trial court displayed favoritism toward the respondent "in failing to instruct the jury upon request, failing to censure nonresponsive witnesses upon request, and in permitting respondent's counsel to persist in leading his witnesses". Twenty-five pages of the opening brief are devoted to this point, including lengthy quotations from the transcript, none of which indicates any partiality on the part of the trial judge.

It is next urged that the court erred in ruling upon the admission of evidence in some dozen instances. Some of these were trivial, in some the evidence in question was admitted at another time, and in none is either error or prejudice disclosed. The record and briefs are voluminous on these points and no useful purpose would be served by considering these matters in detail.

██ It is finally urged that the court erred in "the treatment of the jury instructions". The giving and refusing of twelve instructions are attacked under this head, most of which deserve no consideration. As an example, in defining "consideration", the court read to the jury sections 1605 and 1606 of the Civil Code. The objection urged against this instruction is that "fourteen of the commas which the legislature considered necessary to give these code sections meaning, have been omitted altogether". Further comment is unnecessary. In one instance it is stated that the court erred in deleting certain matter from an instruction. In the instruction, to which reference is made by page and line of the transcript, nothing is deleted. One instruction which it is said should have been given was adequately covered by another instruction which was given. ██ Complaint is made of the refusal of the court to give an instruction to the effect that a witness may be impeached by the party against whom he is called by contradictory evidence or by evidence that he has made, at other times, statements inconsistent with his present testimony as to a material matter, although it is not pointed out where any particular im-

peachment here occurred. We think, however, that the instruction should have been given, but no reversible error here appears. (*People* v. *Plumeyer,* 54 Cal. App. 786 [202 Pac. 888].) A further consideration is that the refused instructions are not printed in appellants' brief and in no instance have the appellants complied with section 3 of rule VIII of the Rules for the Supreme Court and District Courts of Appeal by setting forth in their brief all other instructions bearing upon the same subject.

The testimony given by the appellant James Iriart was in itself sufficient to justify the jury in rejecting the defense offered by him and while it may be conceded that some minor errors appear in this lengthy trial they are not sufficient to justify a reversal. The case was fairly tried and the trial court was extremely liberal in allowing evidence in support of the claimed defense.

When the cause was called for oral argument the appellants moved for diminution of the record, asking to have all exhibits received in evidence and all documents marked for identification brought up, on the ground that it would have been very expensive to have included them in the record. After due consideration the motion is denied.

The attempted appeal from the order denying a new trial is dismissed, and the judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 18, 1938.