[Civ. No. 9958. Third Dist. Sept. 12, 1961.]

FAYE R. SENA et al., Respondents, v. TRAVIS TURNER et al., Appellants.

James P. Mower, Mayes & Ellery and Don Mayes for Appellants.

Kane and Canelo, Thomas J. Kane, Jr., A. B. Canelo and William B. Boone for Respondents.

PEEK, J.—The defendants, Travis Turner and Jerry Attebery, have appealed from the judgment of the Superior Court of Merced County in a wrongful death action in which the jury's verdict was in favor of the plaintiffs and against both defendants.

The action arose out of an automobile accident occurring

just north of Merced on Highway 99 on the night of August 21, 1958. Defendants testified that they had met at a drive-in in Merced and agreed to test their automobiles in a "drag race." Defendant Attebery was driving a 1956 Ford automobile and was accompanied by one Scott, who testified at the trial. Turner's vehicle was a 1958 Ford convertible and he too had a passenger.

Defendants drove their automobiles onto Highway 99, which is at that point a four-lane highway. Turner was in the right-hand lane and Attebery in the left, both cars traveling in a northerly direction. The defendants slowed down to 5 or 10 miles per hour until the cars were approximately even and then the race started. Both of the defendants testified that they accelerated to speeds of 80 to 85 miles per hour. The race was comparatively even for a time and then Turner's automobile gradually drew ahead by two or three car lengths. The decedent, Ross Sena, in his 1954 Mercury was entering the northbound lanes from the left at a posted crossover when the defendants saw his car. At this time, Turner's automobile was approximately three or four car lengths ahead of Attebery's. Sena's automobile, traveling at about 10 miles per hour, was turning north into the right-hand lane; however, the rear of his automobile had not completely crossed the left lane. In an effort to avoid the imminent collision, Turner swerved to the left and attempted to pass the rear of decedent's automobile. The right front portion of the Turner automobile collided with the right rear of the Sena vehicle. The force of the impact hurled decedent's car to the right into the shoulder of the road, where it bounced along a guard rail some 140 feet and burst into flames, killing Ross Sena. The Turner vehicle went off the road to the left along the shoulder of the dividing strip.

The physical evidence shows that there were locked-brake skidmarks from Turner's car 144 feet prior to the point of impact and approximately 142 feet thereafter to where the vehicle finally came to rest. Defendant Attebery was able to drive through the flames between the two automobiles and escaped colliding with either. Attebery stopped his car approximately 200 feet from the point of impact on the shoulder of the dividing strip. There was evidence to the effect that Attebery's vehicle struck a sign where it finally stopped.

Defendants, as well as the witness Scott, testified that the race had been concluded prior to the time they first observed the Sena vehicle. However, previous inconsistent statements

of Attebery that the race was not concluded were also admitted. Prior to the wrongful death action, which is the subject of this appeal, both defendants were indicted for the crime of felony manslaughter, but they pleaded guilty to and were convicted of the lesser offense of misdemeanor manslaughter.

Attebery's first contention upon appeal is that the trial court erred in failing to grant his motions for nonsuit and directed verdict. The argument advanced is that the evidence shows as a matter of law that Attebery's conduct was not a proximate cause of the collision. This contention is clearly devoid of merit, since there was evidence that the race was in progress immediately prior to the time of impact and this factor alone could constitute proximate causation. (*Agovino* v. *Kunze*, 181 Cal.App.2d 591 [5 Cal.Rptr. 534].)

Defendants contend that the court erred in refusing to give certain instructions relating to their contention that the race was over at the time of the accident. However, the following instructions were given to the jury by the trial court:

"The burden is upon the plaintiffs to prove by a preponderance of evidence that the defendants were engaged in a race at the time and place of the happening of this accident or that the defendants, or either of them, were otherwise negligent and that such race or negligence was a proximate cause of the death of Ross G. SENA. . . .

"If plaintiffs have not fulfilled this burden, the defendants are entitled to your verdict and you need not consider the issue of contributory negligence. . . ."

"The burden is upon the plaintiffs to prove by a preponderance of evidence that defendants were negligent and that such negligence was a proximate cause of the death of the deceased, Ross G. SENA. . . ."

"Liability in law attaches only to the proximate cause of injury. Although many circumstances leading up to and surrounding an accident may be linked to it in a chain of causation, so that we may say that the accident would not have happened without them, the proximate cause consists only of the factor or combination of factors that compels the injurious result."

"The mere fact that an accident happened, considered alone, does not prove that it was caused by the negligence of anyone."

"The law does not permit you to guess or speculate as to the cause of the accident in question. If the evidence is

equally balanced on the issue of negligence, contributory negligence or proximate cause, then your finding must be against the party making the charge on that issue."

"However, in this action, a violation of law is of no consequence unless it was a proximate cause of an injury found by you to have been suffered by the plaintiffs."

The instructions given adequately covered the law and therefore there was no necessity for the trial court to give the specific instructions offered by the defendants. (*George* v. *Matthews*, 175 Cal.App.2d 680 [346 P.2d 863].) Furthermore, some of the instructions offered by the defendants were erroneous in stating that as a matter of law Attebery's participation in the race could not be a proximate cause of the accident if the race ended before the collision. The jury could properly find that the race proximately caused the collision even though the race was over if all the hazardous circumstances continued in existence until the time of collision. (*People* v. *Kemp*, 150 Cal.App.2d 654 [310 P.2d 680], *Agovino* v. *Kunze, supra*.)

The defendants also contend that the court erred in instructing the jury regarding the defense of contributory negligence. The trial court gave the following instruction:

"Where a person is killed in an accident, (or suffers such injuries that he or she is unable to testify concerning the accident), there is a legal presumption that such person was using ordinary care and was obeying the law at the time of the accident. I instruct you that in this case there is a legal presumption that the deceased, Ross G. Sena, was obeying the law at the time and place of the accident in question and that he was exercising ordinary care for his own concern at the time and place of the accident. This presumption is in itself a form of evidence, and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence. The presumption is disputable, but unless it is adequately and sufficiently controverted, you are bound to find in accordance with the presumption that the deceased, Ross G. Sena, was obeying the law and was exercising ordinary care for his own concern and was not negligent at the time and place of the accident. The presumption is evidence in the case and is sufficient in and of itself to support a verdict or finding on your part that the deceased driver was careful at the time and place of the accident."

Defendants contend that the part of the instruction reading, "The presumption is evidence in the case and is

sufficient in and of itself to support a verdict . . ." amounts to a direction to the jury that the decedent was not negligent. We do not agree. The instruction leaves the factual determination to the jury and correctly states the law. (*Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590]; *Gigliotti* v. *Nunes,* 45 Cal.2d 85 [286 P.2d 809].)

■ Upon the defendants' request, the court instructed the jury as follows:

"Section 551(a) of the Vehicle Code of the State of California provides as follows:

'(a) The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.' "

Defendants now complain that the court should have also given the proposed instructions defining "immediate hazard." This contention lacks merit, since the instruction as given was reasonably clear. (*Hickenbottom* v. *Jeppesen,* 144 Cal. App.2d 115 [300 P.2d 689].) It cannot be said that the defendants were prejudiced by the trial court's refusal to give the requested instructions.

The defendants also urge that the judgment must be reversed because of comments made by the trial court. One of the comments, while alluded to in the record, does not otherwise appear and thus is not before us on appeal. Defendants also complain of the explanation given by the trial judge for his reason for denying defendants' motion for nonsuit. This statement, however, was made outside the presence of the jury. Clearly, this statement could not affect the jury's verdict.

The following colloquy, however, did take place in the presence of the jury during examination of defendant Turner by counsel for the other defendant, Attebery:

"MR. MOWER: Q. You were charged with a felony manslaughter in this case, weren't you? A. Yes, sir, I was.

"Q. What did you plead guilty to? A. To a misdemeanor manslaughter.

"Q. To a misdemeanor manslaughter, a lesser offense? A. Yes, sir.

"Q. You are in the Service, is that right, an Airman? A. Yes, sir.

"Q. Why did you go along with the idea of pleading to a misdemeanor manslaughter?

494

"Mr. Canelo: Objection, your Honor. Here is the same thing he is trying to get in again.

"The Court: Now you are opening up a field here, Mr. Mower, that I am going to inject myself into here, and I will tell you right offhand that it is not beneficial to your client. Now if you want to pursue it——

"Mr. Mower: I would like to do at least this much, talk to both of them about their reasoning on this. I feel that it is proper, and I would like to do it out of the presence of the jury, and at least make an offer of proof.

"The Court: Well, now you can do anything you want, Mr. Mower, in conducting your case in any manner that you want. But I am telling you right here and right now, that if you go into the matter, as you apparently intend to do, then I will inject myself into this case in something that I rarely do, because the answer that you are going to get from your client is completely a different answer than what he gave me at the time that he entered his plea. Now let's——

"Mr. Mower: We can make the offer of proof later on, your Honor.

"The Court: Well, there is no offer of proof necessary. There is no offer——

"Mr. Mower: Do you object to the question, counsel?

"Mr. Canelo: I do.

"Mr. Mower: You sustained the objection?

"The Court: No, I didn't sustain the objection. I just advised you what was going to happen if you insisted on pursuing that matter, and as I told you then, it certainly won't do your client any good.

"Mr. Mower: It is not my client, of course. It is Mr. Turner.

"The Court: Your client will have the same situation."

 The court on several occasions admonished the jury that its comments were to be ignored and that they should not be influenced in any way by them. In order to reverse the case because of the remarks of the trial judge, we must determine that they so influenced the jury as to prevent the defendants from receiving a fair trial. (*Zinn* v. *Ex-Cell-O Corp.*, 148 Cal.App.2d 56 [306 P.2d 1017].) It was unfortunate that the remarks were made, but we cannot say that this indiscretion amounted to prejudicial error.

Defendants also contend that the trial court erred in rejecting evidence of the defendants' explanation of their guilty pleas. An offer of proof was made that Attebery and

Turner would have testified that they decided to plead guilty to misdemeanor manslaughter because the Air Force would probably not terminate their military service upon such a conviction, but if they were convicted of the felony charged, they would definitely be discharged. In addition, it was to be shown that this explanation was made to the judge hearing the criminal matter in chambers before the guilty plea was entered.

It is apparent from an examination of that part of the record last quoted that the objection made to the introduction of Turner's explanation of his guilty plea was never sustained. The record also discloses that Attebery was never asked why he entered the guilty plea or if any explanation was given to the trial judge. We need not decide if the matter contained in the offer of proof would be properly admissible or not, as the record clearly discloses that such evidence was not admitted. ▆▆ "A mere general offer of proof without producing the witness or stating the evidence whereby the fact in issue is to be proved, or, if the witness be present, without putting a question to him in such form as to give opportunity for objection, is not correct trial procedure and it affords no ground for appeal." (*Douillard* v. *Woodd*, 20 Cal.2d 665, 670 [128 P.2d 6].)

▆▆ Defendants' next contention is that the trial court erred in refusing to give part of a requested instruction regarding the probative effect of the plea of guilty in the criminal case. The court gave the following instruction:

"Evidence of the oral admissions of a party, other than his own testimony in this trial, ought to be viewed by you with caution."

The trial court also instructed the jury that:

"Evidence has been received of a plea of guilty to the charge of violation of Section 192(3)(b) of the Penal Code, misdemeanor manslaughter by automobile, by each of the defendants in this action. Such evidence has been received as an admission against interest on the part of each defendant. It may be considered by you as affirmative evidence along with all of the other evidence in the case."

The court refused to give the rest of the requested instruction:

"Such admissions are not conclusive and the defendants are entitled to explain such admissions and you are to give such admissions and explanations thereof such consideration

and weight as you deem them entitled to and as you would any other admitted evidence.''

Since there was no evidence of any explanations of the prior plea before the jury, the instruction requested, but rejected, was to that extent inapplicable. We find that the instructions given adequately covered the issues raised during the trial. ·

■ The defendants finally contend that the court erred when it instructed the jury in the language of section 511 of the Vehicle Code (as numbered prior to the 1959 recodification), and particularly the second paragraph thereof, which reads:

''The speed of any vehicle upon a highway in excess of any of the limits specified in this section or established as authorized in this code is prima facie unlawful unless the defendant establishes by competent evidence that any said speed in excess of said limits did not constitute a violation of the basic rule declared in Section 510 hereof at the time, place and under the conditions then existing.''

The instruction given has no place in a civil case and is clearly erroneous. (*Rivera* v. *Parma*, 54 Cal.2d 313 [353 P.2d 273].) ■ Thus, it remains to be determined whether or not the error was sufficiently prejudicial to justify reversing the judgment. We think it was not so prejudicial.

The record shows that at the time of the collision the defendants, by their own testimony, were both traveling 60 to 65 miles per hour. The physical evidence and evidence of admissions made to police officers indicates a much higher rate of speed. The speed limit was posted at 55 miles per hour, so the instruction given erroneously placed the burden of proof upon the defendants. However, defendant Turner testified that he was traveling from 60 to 65 miles per hour at the time of the collision, which would be after he had skidded with locked brakes for some distance. The evidence of excessive speed was compelling and we cannot hold that upon a retrial a different result would be probable. (*Shuey* v. *Asbury*, 5 Cal.2d 712 [55 P.2d 1160]; Cal. Const., art. VI, § 4½.) Furthermore, the jury found in favor of the plaintiffs against both defendants. There was little evidence of negligence on the part of Attebery, except upon the theory that he participated in a race with Turner and that this was the proximate cause of the accident. The implied finding of the jury that the race proximately caused the accident in itself supports the judgment and also argues against the theory that a retrial would probably result in a different verdict.

We are of the opinion that, although the record discloses error, the defendants received a fair, if imperfect trial, and the various errors taken singly or in conjunction with each other were not sufficiently prejudicial to require that the judgment be reversed.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.