[Civ. No. 10512. Third District. Aug. 16, 1963.]

FLOYD GUY BYRD, Plaintiff and Appellant, v. W. A. SAVAGE, as Real Estate Commissioner, Defendant and Respondent.

Harbaugh & Grubb and Robert T. Harbaugh for Plaintiff and Appellant.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, and F. Richard Lucas, Deputy Attorney General, for Defendant and Respondent.

FRIEDMAN, J.—Petitioner was holder of a restricted real estate broker's license. (See Bus. & Prof. Code, §§ 10156.5-10156.8.) An accusation was filed with the Real Estate Commissioner charging him with three violations: (1) making misrepresentations to Mr. and Mrs. Harold Chirhart, in violation of Business and Professions Code sections 10177, subdivision (f), and 10177, subdivision (l),* in stating falsely that a certain piece of property to be used as security for a loan was free and clear of all encumbrances; (2) failure to register with the Division of Real Estate as a real property loan broker pursuant to Civil Code section 3081.01; (3) pleading guilty to violation of a city ordinance (drunk in or about an automobile), which was a breach of the conditions upon which the restricted license was held. The accusation was signed by Robert L. Stevenson, a deputy real estate commissioner. After a hearing, the hearing officer rendered proposed findings and decision, finding petitioner guilty of the first and third charges, dismissing the second charge and revoking petitioner's license. The Real Estate Commissioner adopted the proposed decision. Petitioner then sought a writ of mandate in the court below aimed at annulling the revocation. The lower court sustained the first charge, found inadequate evidence to support the third charge and denied relief. Petitioner appeals from the judgment denying relief.

---

*Section 10177 sets forth the grounds for suspension or revocation of real estate licenses. Subdivision (f) describes the following conduct: "Acted or conducted himself in a manner which would have warranted the denial of his application for a real estate license."

Subdivision (l), at the time of the accusation against petitioner, provided for suspension or revocation on the following ground: "Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing." A subsequent amendment has redesignated this subdivision as "(j)." (Stats. 1961, ch. 886.)

By his pleading, petitioner charged the administrative agency with failure to make findings on vital evidence. On appeal, he forsakes this ground and urges a quite different ground, namely, alleged error of the hearing officer in rejecting an offer of proof. The general rule, of course, is that a party may not change the theory of a cause of action on appeal. (*Ernst* v. *Searle*, 218 Cal. 233, 240 [22 P.2d 715].) The record, however, indicates that propriety of the evidentiary ruling was debated in the trial court, both before judgment and on a motion for new trial. Furthermore, the shift is one of legal theory rather than factual debate. Finally, the Attorney General has elected not to urge the procedural objection but to accept the lines of combat drawn by petitioner's briefs on appeal. For these reasons we are not disposed to fasten petitioner with the theory disclosed in his pleading. (*Ward* v. *Taggart*, 51 Cal.2d 736, 742 [336 P.2d 534]; *Panopulos* v. *Maderis*, 47 Cal.2d 337, 340-341 [303 P.2d 738]; cf. *Story* v. *Nidiffer*, 146 Cal. 549, 552 [80 P. 692].)

Sole witnesses called to support the accusation were Mr. and Mrs. Chirhart. They testified that in December 1959 petitioner called upon them with another man, later identified as Nicholas Jankowski. The Chirharts knew petitioner because he was making efforts to sell their trailer court for them. Petitioner sought to borrow $4,000 from the Chirharts for Jankowski's use in buying a motel in Oregon. According to the Chirharts petitioner offered as security a first deed of trust on the Dude Motel in West Sacramento, which motel was owned by petitioner and Bonnie Caton, who later married petitioner; no loan was made on the occasion of this visit; several days later, however, petitioner returned to the Chirharts without Jankowski. At that time the Chirharts gave him a check for $4,000 and he gave them a promissory note and deed of trust on the Dude Motel. According to the Chirharts, petitioner told them that he and Bonnie Caton owned the Dude Motel "lock, stock and barrel" and that he was giving them a first deed of trust. As a matter of fact, there were three prior trust deeds against the Dude Motel, at least one of which was in default. These trust deeds aggregated approximately $70,000. Petitioner and Bonnie Caton had an investment of about $6,000 in the Dude Motel.

Petitioner's testimony is in strong conflict with that of the Chirharts. He testified that when he and Jankowski called upon the Chirharts, they gave him a check for $4,000 and agreed to accept as security a third deed of trust on the Ore-

gon motel which Jankowski was about to purchase. Jankowski's negotiations to purchase the Oregon motel fell through shortly thereafter. According to petitioner, he then returned the original check to the Chirharts, who gave him a new check for $4,000, with the understanding that he would use it in his own business operations. He gave them a deed of trust on the Dude Motel as security for this loan. He denied having said that the Dude Motel was free of encumbrances or that the deed of trust was a first deed of trust. He testified that he did not disclose the existence of the three existing deeds of trust against the Dude Motel because the Chirharts' loan was for a short term and the Chirharts would have lent him money on his own signature. The $4,000 loan was payable at the end of one year.

Jankowski testified that he and petitioner had called upon the Chirharts who, on that occasion, gave petitioner a $4,000 check to be used in Jankowski's Oregon motel transaction. Jankowski's Oregon transaction did not materialize and the $4,000 check was not used. He testified that his conversation with petitioner and the Chirharts did not include any mention of the Dude Motel.

After the above summarized testimony was in the record, petitioner's counsel recalled petitioner to the witness stand. He asked petitioner several preliminary questions concerning a Mr. James Thompson, whom petitioner had discharged as a real estate salesman and who had sued petitioner for commissions. At that point counsel for the Real Estate Commissioner indicated his inability to discern the direction of the examination and suggested an offer of proof. Petitioner's counsel then made the following offer of proof:

"MR. HARBAUGH: Yes, Mr. Hearing Officer, I offer to prove that there has been questionable activity with relation to the bringing of this accusation between a Mr. Thompson, who is a good friend of the Deputy Commissioner who signed the accusation, Robert L. Stevenson, and the ex-angered salesman, James Thompson. I further offer to prove that there have been threats made against Mr. Byrd; that Mr. Thompson was going to see that his license was taken away, not only by Mr. Thompson, but also threats by Mr. Chirhart. I offer to prove further that Mr. Stevenson and Mr. Thompson are acquainted—well acquainted; and that further the attorney that represented Mr. Chirhart in this transaction involving this note and deed of trust is likewise doing business with Mr. James Thompson. And it appears to me that, and I will fur-

ther offer to prove that the only person who could have told anyone about this 'drunk in and about' was Mr. Thompson. This, of course, is, you understand, Mr. Hearing Officer, is a local ordinance. It is not reported to the Department of Motor Vehicles; so it had to be reported to the Commissioner's office. I will further offer to show that there was a second cause of action stated here, which was dismissed at the very beginning of these proceedings, which showed—accused Mr. Byrd of a violation of law that was not in effect until some two months after the alleged violation.

"All this I offer to show is a conspiracy toward getting this man, Mr. Byrd's license. That is my offer of proof."

There was an objection to the offer on the ground of immateriality. The objection was sustained.

The offer of proof contained a mixture of admissible and inadmissible elements. ■ Petitioner was entitled to adduce evidence of bias or hostility on the part of either of the Chirharts as a means of discrediting their testimony. (Code Civ. Proc., § 1847; *People* v. *Vanderburg*, 184 Cal.App.2d 33, 41 [7 Cal.Rptr. 287]; *People* v. *Payton*, 36 Cal.App.2d 41, 55 [96 P.2d 991]; 3 Wigmore on Evidence (3d ed.) §§ 948-950.) Rejection of a proper offer to show conduct or declarations from which bias of these witnesses was inferable would have been error. (*People* v. *Pantages*, 212 Cal. 237, 252-259 [297 P. 890]; *People* v. *Homan*, 103 Cal.App. 161 [284 P. 25].) Thus, evidence of threats by Chirhart or of acts or declarations indicative of his participation in a scheme to "get" Byrd's license was admissible by way of impeachment.

■ Inadmissible elements were the proffered evidence of hostility on the part of James Thompson, petitioner's former employee; Thompson's alleged friendship with Stevenson, the deputy real estate commissioner; and evidence that Stevenson might have initiated the proceeding against petitioner in order to assist Thompson's spiteful design. The motive with which a legal proceeding is instituted, the animus of a complaining witness, are irrelevant except on the question of testimonial credibility. (*Ball* v. *Tolman*, 119 Cal. 358, 363 [51 P. 546]; *Kern County Finance Co.* v. *Iriart*, 26 Cal.App.2d 483, 487-488 [79 P.2d 763]; *People* v. *Casanova*, 54 Cal.App. 439, 444 [202 P. 45]; *People* v. *Kaufman*, 49 Cal.App. 570, 576 [193 P. 953].)

■ Petitioner's offer of proof was a vague, shotgun sort of proposal. His counsel did not have Thompson or Stevenson at the hearing or under subpena. The hearing had

been continued at the request of counsel for the sole purpose of securing Jankowski's attendance, and the latter had completed his testimony when counsel recalled Byrd to the stand and made the offer of proof. Counsel was obviously unprepared to call Thompson or Stevenson as witnesses. (See *Sena* v. *Turner*, 195 Cal.App.2d 487, 495 [15 Cal.Rptr. 857].) He had completed his cross-examination of Chirhart without any mention of alleged threats or of conspiracy on the latter's part; nor did he seek leave to recall Chirhart for questioning on that score. ▮ An offer of proof must be precise and tangible, directed to material facts, indicating the names of witnesses who will testify and the content of their testimony; an offer failing to meet these standards is properly rejected. (*Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 163-164 [195 P.2d 416]; *Braly* v. *Midvalley Chemical Co.*, 192 Cal.App.2d 369, 380-381 [13 Cal.Rptr. 366]; 48 Cal.Jur.2d, Trial, § 108, pp. 152-153.) ▮ An offer of proof may also be rejected where it consists in part of irrelevant matter. (*Rose* v. *Southern Trust Co.*, 178 Cal. 580, 583 [174 P. 28]; *Eaton* v. *Brock*, 124 Cal.App.2d 10, 16 [268 P.2d 58]; 48 Cal.Jur.2d, Trial § 108, pp. 153-154.) ▮ For these reasons the hearing officer properly sustained the objection to petitioner's offer of proof.

▮ One question remains, although it has not been discussed in the briefs. As a general rule, where one of several charges of misconduct is reversed by the trial court, the case should be remanded to the administrative agency to reconsider the penalty. (*Bonham* v. *McConnell*, 45 Cal.2d 304 [288 P.2d 502].) Here, although the trial court found insufficient evidence to support one of the charges, all relief was denied.

An exception occurs when there is no "real doubt" that on a return for reconsideration the administrative agency will impose the same penalty as before. (*Sica* v. *Board of Police Comrs.*, 200 Cal.App.2d 137, 142 [19 Cal.Rptr. 277]; *Strode* v. *Board of Medical Examiners*, 195 Cal.App. 2d 291, 304 [15 Cal.Rptr. 879].) ▮ Since the record does not reveal whether the trial court considered this aspect of the matter, expeditious disposition of this litigation leads us to do so. Before the present accusation was filed, petitioner held a "restricted license" of a sort issued to one who has already violated the licensing law. (Bus. & Prof. Code, § 10156.5.) He had, in effect, probationary status. One of the conditions of the restricted license was that petitioner obey all laws and local ordinances. In the present proceeding the Real Estate Commissioner found him guilty of fraud and dishonest

dealing in violation of former subdivision (*l*) of section 10177. The trial court sustained this finding. The rejected finding was that petitioner had violated the conditions of his restricted license by pleading guilty to a local ordinance violation of "drunk in or about an automobile." It is evident that the trial judge concluded, as a matter of law, that the ordinance violation had no substantial relation to petitioner's licensed status as a real estate broker, that it was comparatively inconsequential as a ground of disciplinary action. In view of the seriousness of the charge sustained by the trial court, the comparatively minor character of the charge which was reversed, and in view of petitioner's prior record as indicated by his restricted license, there is no real doubt that the license would and should be revoked. There is no reason to remand the case for reconsideration of the penalty.

Judgment affirmed.

Pierce, P. J., and Janes, J. pro tem.,* concurred.

_____

*Assigned by Chairman of Judicial Council.