[Civ. No. 20658. First Dist., Div. Two. Nov. 6, 1963.]

LESTER RAY DE ORNELLAS, Plaintiff and Appellant, v. ANTHONY NICK TRUCHETTA et al., Defendants and Respondents.

Machado, Feeley & Machado and Kenneth Machado for Plaintiff and Appellant.

Campbell, Custer, Warburton & Britton and George A. Strong for Defendants and Respondents.

TAYLOR, J.—On this appeal from an adverse judgment rendered on a jury verdict in a personal injury action, plaintiff, Lester R. De Ornellas, asserts that erroneous and prejudicial instructions were given to the jury pertaining to the effect of speed in excess of the prima facie speed limit (Veh. Code, § 511).[1]

The facts are as follows: A motorcycle owned and driven by the appellant ran into the right side of a bus driven by respondent, Anthony N. Truchetta, and owned by respondent, San Jose City Lines, Inc. The collision occurred on July 7, 1958, about 6:10 a.m. in the outside westbound lane of the intersection of San Carlos Street and Sunol Avenue.

San Carlos has four lanes, running east and west; Sunol

---

[1]The citations are to the provisions of the Vehicle Code in effect at the time of the accident.

two lanes, running north and south. About 100-120 feet east of the intersection, San Carlos crosses railroad tracks, Montgomery Street, and then becomes a viaduct. At the western base of the viaduct (about 300 feet from the railroad tracks) another street enters San Carlos from the north. San Carlos is perfectly straight from the base of the viaduct to the Sunol intersection. The view is unobstructed in both directions. On the day of the accident, the weather was clear, the pavement dry.

The bus terminal of respondent San Jose City Lines fronts on San Carlos at the southwest corner of the intersection. On the morning of the accident, respondent Truchetta was driving the bus on its scheduled run out of the terminal. First, he drove into the outside eastbound lane of San Carlos, and then into the inside eastbound lane. There was no traffic at all. As he entered the inside eastbound lane, he turned on his blinkers to indicate a left turn, and stopped in the intersection so that the bus was on an angle facing partially east on San Carlos and partially north on Sunol. While stopped, Truchetta saw the appellant's motorcycle approaching from the east on San Carlos about 500 feet away at the western base of the viaduct on the other side of the railroad tracks. He was unable to estimate the speed of the motorcycle and did not see it again before the collision.

After remaining stopped for a few seconds, Truchetta completed his left turn into Sunol. When the bus was parallel with Sunol, the motorcycle struck the bus behind the right front wheel. The point of impact was approximately 6 feet south of the extension of the north curb of San Carlos and 6 feet west of the extension of the east curb of Sunol. The outside westbound lane of San Carlos is about 20 feet wide as there is a parking lane; the inside westbound lane is about 9 feet wide. The bus was in low gear. It was 35 feet in length and partially extended across both lanes at the point of impact.

Appellant testified that prior to the accident, he was riding his motorcycle in the outside westbound lane of San Carlos. As he approached the viaduct from the east, his speed was 25-30 miles an hour. There was no other traffic, east or westbound. As he came down the west side of the viaduct, appellant's speed was approximately 30 miles an hour, and 25 miles an hour or more as he crossed the railroad tracks. While approaching the railroad tracks, he looked to his right and left to see whether a train was approaching but did not

look for traffic ahead of him.

When the appellant was about 15 to 20 feet west of the railroad tracks, he saw the bus for the first time making a left turn into Sunol. Appellant immediately applied his brakes. The rear wheel of the motorcycle slid to the left while the motorcycle itself slid to the right and struck the right side of the bus, and laid down approximately 70 feet of skid marks. On the basis of the skid marks and the damage to both vehicles, the investigating officer concluded that the speed of the motorcycle prior to the application of the brakes was about 45 miles per hour; that of the bus not more than 10 miles per hour. The police report stated that the speed limit for both vehicles was 25 miles per hour.

■ The main contention on appeal is that the trial court erroneously instructed the jury in the language of the second paragraph of section 511 of the Vehicle Code. It has been repeatedly held that this portion of section 511 should neither verbatim nor in substance be included in an instruction in a civil case (*Rivera* v. *Parma,* 54 Cal.2d 313 [5 Cal. Rptr. 665, 353 P.2d 273]). The instruction given being clearly erroneous, it must be determined whether the error was sufficiently prejudicial to justify this court in reversing the judgment.

■ Appellant argues that the instruction was clearly prejudicial as it improperly shifted to him the burden of proof on the issue of contributory negligence. Respondents concede the error in the giving of the instruction but argue that the error does not require reversal under the facts of this case. We agree. (*Sena* v. *Turner,* 195 Cal.App.2d 487 [15 Cal.Rptr. 857]; *Beard* v. *David,* 179 Cal.App.2d 175 [3 Cal. Rptr. 651]; *Faselli* v. *Southern Pacific Co.,* 150 Cal.App. 2d 644 [310 P.2d 698].)

Although the instruction was given in the precise language of the statute[2] which refers to a "defendant," appellant ar-

[2]Prima facie speed limits. "The speed of any vehicle upon a highway not in excess of the limits specified in this section or established as authorized in this code is lawful unless clearly proved to be in violation of the basic rule declared in section 510 hereof.

"*The speed of any vehicle upon a highway in excess of any of the limits specified in this section or established as authorized in this code is prima facie unlawful unless the defendant establishes by competent evidence that any said speed in excess of said limits did not constitute a violation of the basic rule declared in section 510 hereof at the time, place and under the conditions then existing.*

"The prima facie limits referred to above are as follows and the same shall be applicable unless changed as authorized in this code and,

gues that the word was applied to him as plaintiff in the consideration of the contributory negligence issue by the jury (*Clark* v. *Pamplin,* 147 Cal.App.2d 676, 680 [305 P.2d 950]). The record shows that at the time of the accident, appellant, by his own testimony, was traveling between 25 to 30 miles per hour. He testified he looked to his right and left to see whether a train was approaching but did not look for the traffic ahead of him. The uncontroverted evidence indicated that the speed of the bus was not more than 10 miles per hour while the investigating officer believed that appellant's speed could have been 45. The evidence of appellant's negligence was so compelling that we cannot conclude that upon a retrial, a different result would be probable (*Shuey* v. *Ashbury,* 5 Cal.2d 712 [55 P.2d 1160]), as there was little evidence of neglect on the part of the respondent (*Sena* v. *Turner, supra*).

 The next contention on appeal is that the trial court erred in instructing the jury on subdivision (b) of section 511 of the Vehicle Code which stated that 25 miles per hour is the speed limit in any business or residence district. Appellant argues that in the absence of proof of signposting in the area, this instruction was prejudicial and also contends that there was no evidence to indicate that the area involved was a business district. There is no merit in either of the two contentions. At one time, section 511 of the Vehicle Code was construed to require signposting in all cases (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614 [255 P.2d 785]). The accident in the instant case, however, occurred after the 1955 amendment of section 511 (Stats. 1955, ch. 866, p. 1480, § 1) which eliminated the language relied upon by the Supreme Court in the *Daniels* case, *supra.* The nature of a business district is now shown by proof of facts specified in the definition of a business district by sections 89 and 90.1 of the Vehicle Code (*Beard* v. *David, supra*).

In the instant case, the investigating officer testified that he did not count the number of commercial buildings in the area because "there is nothing but commercial along there." The presence of the railroad track, the viaduct and the respondent's terminal in the southwest corner of the intersec-

---

if so changed, then only when signs have been erected giving notice thereof, in which event the speed designated on the sign shall be the prima facie limit. ...'' The erroneous portion of the instruction is italicized.

tion is not disputed by the appellant. We think, therefore, there was ample evidence to show that the location of the accident was in a business district as defined by sections 89 and 90.1 of the Vehicle Code. (See also *Payette* v. *Sterle,* 202 Cal.App.2d 372, 379 [21 Cal.Rptr. 22].) Furthermore, as to the presence of a sign at Montgomery, there was conflicting evidence from the two police officers. This, however, is of no significance as there was a 25-mile-per-hour sign between Vine and Locust Streets on San Carlos, approximately 8 blocks east of the viaduct. As appellant testified he had proceeded west on San Carlos from 17th Street to Sunol, he of necessity passed the sign near Vine and Locust. Even in areas where a speed restriction sign is required, it needs to be erected and maintained only at the boundary at the outside limits of the area in which the speed is to be restricted (Veh. Code, §§ 468, 468.2).

We are of the opinion that, although the record discloses error, the appellant received a fair if imperfect trial, and that the error in the instruction was not sufficiently prejudicial to require that the judgment be reversed.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.