Filed 1/30/23 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| JESSE GRIEGO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CITY OF BARSTOW,<br><br>    Defendant and Appellant. | B322638<br><br>San Bernardino County<br>Super. Ct. No. CIVDS1936454<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>**[NO CHANGE IN JUDGMENT]** |


THE COURT:

IT IS ORDERED that the opinion in the above-entitled matter filed on January 3, 2023, be modified as follows:

On page 2, the second paragraph of part I is deleted and is replaced with the following paragraph:

> In 2007, the Fire District issued a memorandum to its captains directing personnel not to attend sporting events while on duty. Later the District reprimanded Griego, in writing, for an "intentional violation of a Verbal Directive, and a written Memorandum . . . ." Griego's

violations were for coaching sports while on duty. After that, the District once again reprimanded Griego for coaching on duty. The reason was "taxpayers don't pay us to coach softball." Later he was seen taking a fire engine to a sports event and coaching while on duty. The District reprimanded Griego a third time: "[T]here is no coaching on duty in any capacity. Do not take the engine. Period." During his third reprimand, Griego was defensive and argumentative and expressed no regret.

The petition for rehearing filed by Respondent Jesse Griego is denied.

There is no change in the judgment.

_____

STRATTON, P. J.          WILEY, J.

I would grant this petition for rehearing.

_____

HARUTUNIAN, J.[1]

_____

[1] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/3/23 (unmodified opinion; see concurring & dissenting opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JESSE GRIEGO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CITY OF BARSTOW,<br><br>    Defendant and Appellant. | B322638<br><br>San Bernardino County<br>Super. Ct. No. CIVDS1936454 |

    APPEAL from a judgment of the Superior Court of San Bernardino County, Donald R. Alvarez, Judge.  Reversed with directions.

    Best Best & Krieger, Thomas M. O'Connell, B. Allison Borkenheim and Pokuaa M. Enin; Buchalter, Thomas M. O'Connell for Defendant and Appellant.

    Rain Lucia Stern St. Phalle & Silver and Michael A. Morguess for Plaintiff and Respondent.

————————————

Jesse Griego was a captain in the Barstow Fire Protection District. The City of Barstow fired him for criminal and perjurious acts, for willful refusal to comply with official orders, and for setting a poor professional example for his subordinates, as well as for other charges no longer at issue. The trial court erred by remanding this case for the City to reconsider Griego's discipline. There is no real doubt the City would terminate Griego, so there is no reason to remand the case. (See *Byrd v. Savage* (1963) 219 Cal.App.2d 396, 402–403 (*Byrd*).) We reverse the trial court and affirm the City's decision.

I

Griego worked for the Fire District from 1997 to 2018. He also coached children's sports teams, including the girls' softball team at Barstow High School.

In 2007, the Fire District issued a memorandum to its captains directing personnel not to attend sporting events while on duty. On March 23, 2017, a fire chief verbally reprimanded Griego for coaching on duty. Griego was defensive and argumentative. The fire chief told him, "[T]here is no coaching on duty in any capacity. Do not take the engine. Period." Griego expressed no regret, and later was seen again attending a sporting event while on duty. On March 29, 2017, the chief issued a written reprimand.

Also in early 2017, a safety officer at Barstow High School reported she suspected an inappropriate relationship between Griego and a 15-year-old student, H.S. The officer saw Griego bring H.S. lunch during school hours and H.S. drive Griego's car. She heard students saying H.S. was wearing Griego's shirt, the two had adopted a cat together, and they had visited a theme park together.

2

The Barstow Police Department opened a criminal investigation into Griego for suspected statutory rape (Pen. Code, § 261.5). The City placed Griego on paid administrative leave, and Barstow High School told him to end contact with the girls' softball team. Nonetheless, Griego continued to attend practices and games and to communicate with coaches and players, including H.S. The investigative detectives reported they believed Griego had continued his inappropriate relationship with H.S. despite the criminal probe, but the San Bernardino County District Attorney's Office ultimately did not prosecute.

The City launched its own investigation into whether Griego had violated the Fire District's Personnel Rules and Regulations, rule 6, section 10.3. This section gives examples of grounds for disciplinary action which include dishonesty, insubordination, violation of rules or a supervisor's orders, or "[o]ther acts which are incompatible with service to the public" including "any conduct or behavior, either on or off duty, which causes discredit or would reasonably tend to cause discredit to fall upon the City, its officers, agents or departments."

The City's investigator sustained 19 allegations against Griego. These allegations included, among others, that Griego (1) sought an "intimate dating relationship" with minor H.S.; (2) defied specific directions not to coach while on duty despite multiple warnings; (3) carried a concealed handgun outside his home without a permit; and (4) filed a false court document under penalty of perjury.

The handgun allegation referred to November 2017, when Griego carried a concealed gun to investigate suspicious people outside his home. A police officer arrived and asked Griego if he had a gun; Griego said yes and showed it to him. The officer

3

asked if he had a concealed carry permit; Griego did not.  Penal Code section 25400 prohibits carrying a concealed gun in public without a permit.

As for the perjury, in 2017 Griego's ex-wife applied for a domestic violence restraining order against him.  A temporary restraining order issued in July 2017 included a direction to store any firearms with the police department or a licensed gun dealer.  Yet in August 2017, Griego signed and filed a response that declared, "I do not own or have any guns or firearms."  Griego later admitted he had owned guns for about two years.  Regarding the false court filing, he said, "I probably didn't even read that and pay attention to that."

Following the investigative report, the fire chief issued Griego a notice of intent to terminate.  This notice explained why Griego's conduct violated the Fire District's personnel policies and listed the sustained allegations, the specific rules violated, and prior incidents of discipline.  It advised Griego of his right to respond pursuant to *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*).  Following Griego's *Skelly* hearing, the fire chief issued Griego a notice of termination based on 18 of the 19 allegations.  The fire chief wrote Griego's on- and off-duty conduct was "disgraceful" and had brought discredit upon the Fire District.

Griego appealed through nonbinding advisory arbitration.  The parties introduced evidence and heard witness testimony over the course of 11 days.  The arbitrator concluded there was sufficient evidence to sustain six of the 18 allegations against Griego.  He found insufficient evidence supported the charge of an inappropriate relationship, however, as H.S. and her family testified nothing untoward had happened.  The arbitrator noted

4

the only witness who claimed to have seen sexual activity between the two—Griego's ex-wife—was not credible.  He said Griego had "demonstrated a certain disregard for directives and instructions" and "exhibited a somewhat cavalier attitude to the expectations of his position," but found the penalty of termination no longer appropriate because the "major part" of the allegations was not sustained.  He advised reducing the penalty to a 30-day suspension.

The arbitrator sent his recommendation to the city manager.  Pursuant to a memorandum of understanding between the City, the Fire District, and the union, the city manager had the right to amend, modify, or revoke the arbitrator's recommendation.  The city manager's decision would be final and binding.

The city manager disagreed with the arbitrator and concluded the evidence demonstrated Griego indeed had pursued an intimate dating relationship with H.S.  The manager noted both Griego and the arbitrator focused on the scant evidence the relationship was sexual.  She found the relationship was inappropriate for a fire captain regardless of sexual contact.  She reversed the arbitrator's finding on this one allegation:  Griego's relationship with H.S.

The city manager affirmed the arbitrator's findings as to the other allegations.  She "identified a pattern of inconsistent statements and disregard of operational directives and orders" by Griego.  She noted the record was "fraught with examples" of Griego disobeying express orders, giving conflicted explanations, and failing to demonstrate any remorse or understanding.  His overall conduct, she said, was inconsistent with that expected of an experienced fire captain.  The city manager upheld the fire

5

chief's decision to terminate based on the now-remaining seven sustained allegations.

Griego filed a petition for writ of administrative mandate in the superior court. The superior court, exercising its independent judgment as to the City's findings of misconduct, granted the writ in part and denied it in part. It found there was sufficient evidence to sustain only *three* allegations: coaching on duty, carrying a concealed handgun without a permit, and filing a false court document. The superior court held termination was *not* appropriate based on these three allegations and remanded the matter for reconsideration of Griego's discipline.

The City appealed the trial court's decisions (1) that the City abused its discretion by firing Griego based on the three sustained allegations and (2) that the case was remanded to the City to redetermine Griego's discipline.

## II

After outlining the standards of review, we reverse two erroneous rulings by the trial court: that the City could not fire Griego based on the three sustained allegations, and that remand was appropriate.

## A

Trial courts generally review petitions for writs of administrative mandate to see if the respondent agency abused its discretion. An agency abuses discretion if it does not proceed as required by law, its decision is not supported by the findings, or its findings are not supported by the evidence. (Code Civ. Proc., § 1094.5, subd. (b).) Trial courts exercise independent judgment when reviewing administrative decisions affecting a right that is vested and fundamental. (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44.)

Permanent employees have a vested interest in their employment.  (*Brush v. City of Los Angeles* (1975) 45 Cal.App.3d 120, 123.)  When such a petitioner claims the findings are not supported by the evidence, there is an abuse of discretion if the weight of the evidence does not support the findings.  (§ 1094.5, subd. (c).)

Despite this independent judgment about the agency's *findings*, trial courts must not disturb a *penalty* absent an abuse of discretion.  The trial court is not free to substitute its discretion for that of the agency concerning the degree of punishment.  (*Nightingale v. State Personnel Bd.* (1972) 7 Cal.3d 507, 515.)  Agencies have a wide latitude of discretion, and courts defer to their expertise unless the penalty is "arbitrary, capricious or patently abusive."  (*Cassidy v. Cal. Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 627–628; see also *id*. at p. 633.)  Put another way, trial courts may overturn a penalty when it "exceeds the bounds of reason."  (*Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 716, 721.)  If reasonable minds may differ, there is no abuse of discretion.  (*Lake v. Civil Service Com.* (1975) 47 Cal.App.3d 224, 228.)

On appeal, we also review the administrative decision—not the trial court's—for abuse of discretion.  (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37 (*Deegan*) [no deference to trial court's determination of penalty assessed]; see also 8 Witkin, Cal. Procedure (6th ed. 2022) Writs, § 293.)  Because the City's appeal is limited to whether the superior court erred in overturning its decision to terminate Griego, we consider only the findings on the sustained allegations in our review of its penalty.

B

Based on the three sustained allegations, termination was well within the City's broad discretion. The City did not abuse its discretion.

The city manager's letter explained her decision to uphold Griego's termination. About half of this letter addresses Griego's inappropriate relationship with H.S.; the other half explains other reasons Griego "failed to conduct himself in a manner consistent with the expectations of a Fire Captain." In the manager's words, "Griego's lack of credibility, inconsistent statements, inappropriate actions with [H.S.] and his conscious disregard for District policy" justified termination.

We disregard one of these four stated reasons for termination—Griego's relationship with H.S. The other three reasons apply to conduct described in the three sustained allegations, namely: refusing to follow an express directive, issued multiple times, not to coach softball while on duty; carrying a concealed handgun without a permit; and lying under penalty of perjury about possessing firearms. These actions demonstrate a lack of credibility, reliability, and trustworthiness and were a reasonable basis for the City's decision to sustain termination.

C

The trial court erroneously remanded Griego's case.

The law on this issue is in *Miller v. Eisenhower* (1980) 27 Cal.3d 614 (*Miller*). We review *Miller*.

Dr. Donald Miller applied to join a hospital staff, but the hospital rejected his application because he supposedly lacked an "ability to work with others." (*Miller, supra,* 27 Cal.3d at pp. 620-621, 627.) The evidence was Miller was "flamboyant," "a little

8

impetuous," and "a controversial person" who expressed himself "forcefully and vigorously." (*Id.* at pp. 621, 631.) Other evidence was that Miller created "dissension" and that he had "relatively few friends in the community." (*Id.* at p. 622.) The Supreme Court clarified the proper decisional standard and remanded the case to the hospital for it to determine whether Miller's "characteristics of personality which other staff members or administrators find personally disagreeable or annoying" would be detrimental to patient care. (*Id.* at pp. 631–632.)

As the City explains, *Miller*'s facts are at a considerable remove from this case. The City penalized Griego, not for a "controversial" personality, but for criminal and perjurious actions and for insubordination that "displayed a poor professional example to [his] subordinates." It wrote to him, simply, "You cannot be trusted to perform your duties."

The trial court relied upon *Miller*, but the City rightly critiques that citation as factually inapposite. Griego does not defend the trial court's reliance on *Miller*: his brief omits mention of *Miller*.

Although *Miller*'s precise holding and its facts do not resemble Griego's situation, *Miller* did survey precedent and formulate a general rule. We turn to that general rule and to its exception.

The *Miller* opinion stated that it is "well settled, of course, in cases involving the imposition of a penalty by an administrative body, that when it appears that some of the charges are not sustained by the evidence, the matter will be returned to the body for redetermination in all cases in which there is a 'real doubt' as to whether the same action would have

been taken upon a proper assessment of the evidence." (*Miller, supra*, 27 Cal.3d at p. 635.)

After stating this general rule, *Miller* cited 10 precedents to illustrate its source and proper application. (See *Miller, supra*, 27 Cal.3d at p. 635.) Of these 10 cited cases, none is completely on point, but the closest is *Byrd, supra,* 219 Cal.App.2d 396. We recount *Byrd*, explain its pertinence, and apply this law, which our Supreme Court specifically has approved. (*Miller, supra*, 27 Cal.3d at p. 635.)

Floyd Byrd held a "restricted real estate license." (*Byrd, supra*, 219 Cal.App.2d at p. 398.) This type of license is the "sort issued to one who has already violated the licensing law." (*Id.* at p. 402.) Byrd had, "in effect, probationary status." (*Ibid.*)

California's Real Estate Commissioner considered three charges against Byrd.

One was that realtor Byrd had violated a statute providing for license suspension or revocation if the license holder committed "fraud or dishonest dealing." (*Byrd, supra*, 219 Cal.App.2d at p. 398 & fn. *.) The basis for this accusation was that Byrd had stated "falsely that a certain piece of property to be used as security for a loan was free and clear of all encumbrances." (*Id.* at p. 398.)

The second charge was that Byrd had failed to register as a "real property loan broker." (*Byrd, supra*, 219 Cal.App.2d at p. 398.)

The third charge related to Byrd's "pleading guilty to violation of a city ordinance (drunk in or about an automobile)." (*Byrd, supra*, 219 Cal.App.2d at p. 398.)

10

The Real Estate Commissioner sustained the first and third counts but rejected the second—the one about registering as a loan broker. The Commissioner revoked Byrd's license.

The superior court reviewed the matter, sustained the charge about "fraud or dishonest dealing," dismissed the charge about alcohol, and affirmed the license revocation.

The Court of Appeal affirmed the trial court's judgment. The pertinent section of this opinion analyzed whether Byrd's case should be remanded to the Real Estate Commissioner. The court decided remand was unnecessary.

"As a general rule, where one of several charges of misconduct is reversed by the trial court, the case should be remanded to the administrative agency to reconsider the penalty. [Citation.] Here, although the trial court found insufficient evidence to support one of the charges, all relief was denied." (*Byrd, supra*, 219 Cal.App.2d at p. 402.)

The *Byrd* decision explained why the court was rejecting remand and thus was following an exception to the general rule. "In view of the seriousness of the charge sustained by the trial court, the comparatively minor character of the charge which was reversed, and in view of petitioner's prior record as indicated by his restricted license, there is no real doubt that the license would and should be revoked. There is no reason to remand the case for reconsideration of the penalty." (*Byrd, supra*, 219 Cal.App.2d at p. 403.)

*Byrd* resembles this case because it involved a serious employment decision. The Commissioner effectively barred Byrd from work as a realtor, just as the City fired Griego from his job.

But *Byrd* does not squarely control this case. No precedent does.

11

This case differs from *Byrd* because the accusation that Griego had an inappropriate relationship with a minor was not "comparatively minor." (*Byrd*, *supra*, 219 Cal.App.2d at p. 403.)

Another difference is that Griego's employment was not probationary. Rather, Griego was a fire captain with long tenure and supervisory responsibilities. This difference, however, is more aggravating rather than exonerating: an experienced but defiantly insubordinate *supervisor* sets an intolerable example by repeatedly flouting direct commands from his superior.

By the same token, Griego's sustained misconduct was more serious than Byrd's false statement about property. Griego's mendacity constituted a pattern that included perjury; he was unapologetically insubordinate; and he had violated the Penal Code's gun laws. Griego's sustained misconduct "would reasonably tend to cause discredit to fall upon the City, its officers, agents or departments." His repeated and varied misconduct harmed the Fire District. (See *Skelly*, *supra,* 15 Cal.3d at p. 218 [in determining abuse of discretion, courts consider harm to public service, circumstances surrounding misconduct, and likelihood of its recurrence].)

Following *Byrd*, there is no real doubt the City would terminate Griego. There is no reason for remand.

///

12

## DISPOSITION

We reverse the judgment of the superior court with directions to deny Griego's petition for writ of administrative mandate and to enter judgment for the City of Barstow. We award costs to the City.



WILEY, J.


I concur:


STRATTON, P. J.

13

**HARUTUNIAN, J.,** Concurring and Dissenting:

I concur in part and respectfully dissent in part. I fully agree with the majority's conclusion that the trial court erred in ruling that the City could not fire Griego based on the three sustained allegations. I agree that the three sustained allegations brought termination within the City's broad discretion. But I cannot join the decision to overturn the trial court's order to remand the case for reconsideration by the City of its level of punishment. The City's decision to terminate Griego was based in part on the extremely serious "suspected statutory rape"[2] allegation. The fire chief relied on that charge in deciding to terminate Griego. So did the city manager.

The City has not appealed the trial court's ruling that termination must be justified by the three sustained allegations, not including the "unsustained" statutory rape allegation. The majority concludes that if we were to remand the case, the City is sure to conclude termination is warranted. Perhaps. But how can we conclude that when there have already been two decisions that termination is *not* warranted when "statutory rape" is not considered? The first is when the arbitrator found that "statutory rape" was not established, and that the penalty justified by Griego's other conduct was a 30-day suspension, not termination. The second is when the trial court reviewed the city manager's termination decision, found insufficient evidence to sustain the "statutory rape" allegation, and concluded termination was not warranted based on the sustained allegations. The City was never faced with deciding whether to

_____

[2]     References to "statutory rape" are simply a short-hand for the "intimate dating relationship with a minor" allegation.

1

terminate Griego when "statutory rape" cannot be factored into the decision in any way. He should be allowed to present his arguments with the limitations that now exist. The city manager decided to terminate based on *seven* sustained allegations, including "statutory rape." The decision now would be based on only three sustained allegations that are arguably far less serious than the sexual misconduct charge.

I express no opinion about whether Griego should be terminated. I simply feel he is entitled to "make his case" to the City based only on the permissible charges. As the majority recognizes, this is the "well settled" general rule. (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 635.) The distinctions in the case relied on by the majority, *Byrd v. Savage* (1963) 219 Cal.App.2d 396, (comparatively minor accusation, and probationary licensee) render it inapplicable in my view.

We should remand the case to the City to reconsider the penalty, considering only the three sustained allegations.


HARUTUNIAN, J.*

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.